Camille W. Hill, Esq.
Bond, Schoeneck & King, PLLC
*Counsel for Debtor*
One Lincoln Center
Syracuse, New York 13202

J. Eric Charlton
Barclay Damon, LLP
*Counsel for Plaintiff Alder Creek*
*Beverages, LLC*
125 East Jefferson Street
Syracuse, New York 13202

In re:   N-Liquidation, Inc. and NT-Liquidation, Inc.
       Chapter 11 Case No.: 15-60823

       Alder Creek Beverages, LLC v. N-Liquidation, Inc., NT-Liquidation, Inc., NW-Liquidation, Inc., MWD-Liquidation, Inc.
       Adversary Proceeding No.: 16-80016

## LETTER-DECISION AND ORDER

Before the Court is the motion of N-Liquidation, Inc., NT-Liquidation, Inc., NW-Liquidation, Inc., and MWD-Liquidation Inc. (collectively, "Debtor-Defendants") titled "Motion for Summary Judgment" pursuant to Rule 56(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P"), as incorporated in Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."). The Motion was filed in the above-referenced adversary proceeding on November 8, 2016 ("the Motion," ECF Adv. No. 6),[1] and heard at the Court's regular motion term in Utica, New York on November 29, 2016. This adversary proceeding was commenced on October 11, 2016 by Alder Creek Beverages, LLC ("Plaintiff") as purchaser of substantially all of the assets of Debtor-Defendants. Debtor-Defendants filed a Memorandum of Law in Support of their Motion on November 8, 2016 (ECF Adv. No. 8). Plaintiff filed both a Response to the Motion

---

[1] Documents filed in the adversary proceeding shall be referenced as ("ECF Adv. No. __"), whereas documents filed in the main Chapter 11 case shall be referenced as ("ECF No. __").

and a Memorandum of Law on November 22, 2016 ("Plaintiff's Response," ECF Adv. No. 12 and 11, respectively). At the request of the Court, Debtor-Defendants additionally filed a letter response on November 30, 2016, in further support of their Motion ("Debtor-Defendants' Letter Response," ECF Adv. No. 14). Plaintiff filed a letter reply to Defendants' Letter Response on December 2, 2016 ("Plaintiff's Letter Reply," ECF Adv. No. 15). After consideration of the parties' written submissions and arguments on November 29, 2016, the Court now makes the following findings of fact and conclusions of law.[2]

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (N), and (O), and the retention of jurisdiction clause contained within the Court's December 21, 2016, Order, which provided that "the Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order."

---

[2] The docket reflects further filings by both parties, which post-date the deadlines set by this Court. Debtor-Defendants filed a supplemental letter on December 9, 2016, (ECF Adv. No. 16) in response to Plaintiff's December 2, 2016 letter, and Plaintiff filed a response to that letter on December 12, 2016, (ECF Adv. No. 17) arguing therein that Debtor-Defendants' letter is untimely, it introduces new matter, and their argument is without merit. Debtor-Defendants' supplemental letter was not authorized and raises new issues that were not raised in any of Debtor-Defendants' previous papers. Debtor-Defendants ask the Court to take Judicial Notice of an Order Approving First Application for Interim Compensation entered in the main case on August 9, 2016 ("Order Approving Compensation," ECF No. 405), which includes a decretal paragraph authorizing Bond to endorse the insurance refund checks and disburse those funds as part of the Professional Fee Carve-Out. Seemingly, Debtor-Defendants rely upon the law of the case doctrine or, alternatively, an equitable argument. The law of the case doctrine is inapplicable because the issue of entitlement to the insurance refunds was neither at issue nor decided explicitly or by necessary implication. Moore's Federal Practice- Civil ¶ 3. The decretal paragraph contained in the Order Approving Compensation that is now relied upon by Debtor-Defendants was made in the context of a dispute with the secured lender. Entitlement to insurance policies as between Debtor-Defendants and Plaintiff was not yet at issue. Therefore, the Order Approving Compensation is not dispositive as to this issue. Lastly, if Debtor-Defendants are making an equitable argument, the Court finds that this argument is untimely and will not be considered.

## FACTS

The facts of this case are undisputed. On December 30, 2015, Plaintiffs acquired substantially all of the assets of Debtor-Defendants in accordance with an Order issued by this Court on November 24, 2015 (the "Sale Order") [ECF No. 298]. The Sale Order authorized the sale of such assets pursuant to an Asset Purchase Agreement ("APA") dated as of November 24, 2015, and an Order was issued on December 21, 2015 [ECF No. 323] approving the APA ("APA Approval Order). The sale transaction closed on December 30, 2015, and the Debtors issued a Bill of Sale to Plaintiff at the Sale Closing.

The terms of the APA directed the sale transaction. Section 1.1 of the APA lists the "acquired assets" in the transaction. In relevant part, Section 1.1 states that " 'Acquired Assets' shall mean solely the following property of Sellers . . . (j) all surety accounts, prepaid expenses, *refunds* (including all tax and *insurance refunds*), security and like deposits and other similar prepaid items *relating to any Acquired Assets* or any Assumed Liabilities" (emphasis added). Section 1.1(m) includes as "Acquired Assets" "all of Sellers' insurance policies and claims and rights thereunder relating to the Business, any Acquired Assets or Assumed Liabilities, except as provided in Section 1.2(k)."

In addition, Section 1.1(c) includes as "Acquired Assets" "Customer Contracts," "Purchase Orders," "Supplier Contracts," "Equipment Leases," "Comsource Agreements," and "all other Contracts listed on Schedule 1.1(c)." Schedule 1.1(c) lists as "Assigned Contracts:" (1) a lease for a labeling machine with TCF Equipment Finance, (2) a lease for a bottle handle applicator with TCF Equipment Finance, (3) a lease for seven forklifts with Wells Fargo Financial Leasing, and (4) a distribution agreement with C&S Wholesale Grocers, Inc.

Section 1.2 of the APA lists the "excluded assets" in the sale transaction, notwithstanding the "acquired assets" listed in Section 1.1. In relevant part, Section 1.2(c) excludes "all prepaid expenses, *refunds* (including all tax and *insurance refunds*), security and like deposits and other similar prepaid items, in each case *relating to any Excluded Assets* or Excluded Liabilities" (emphasis added). Section 1.2(k) excludes "the insurance policies set forth on Schedule 1.2(k) and claims and rights thereunder." Schedule 1.2(k) is titled "Excluded Insurance Policies," and "none" is listed under that section. Lastly, Section 1.2(m) excludes "all Contracts of Sellers, other than the Assigned Contracts."

Section 1.4 of the APA lists the "excluded liabilities." In relevant part, Section 1.4(a) excludes "any liabilities in respect of or relating to or otherwise arising, whether before, on, or after the Closing Date, out of, or in connection with the Excluded Assets." Additionally, Section 1.4(h) excludes "any payables and priority or non-priority secured or unsecured Claims not expressly assumed under this Agreement." Section 1.4(l) excludes "any Liabilities arising under any Contract that is not an Assigned Contract." Lastly, Section 1.4(t) excludes "any other Liabilities not expressly assumed pursuant to Section 1.3."

On June 14, 2016, following closing of the sale transaction, Acadia Insurance Group – Continental Western Insurance Company ("Continental Western") issued check number 0600150767 payable to Debtor-Defendants Nirvana, Inc., n/k/a N-Liquidation Inc., and Millers Wood Development Corp., n/k/a MWD-Liquidation, Inc., in the amount of $18,236.01 ("Continental Check"). The Continental Check represented an audit refund under Debtor-Defendants' commercial liability policy number 0253038.18.

Also on June 14, 2016, Acadia Insurance Group – Union Insurance Company ("Union") issued check number 0600151667 payable to Debtor-Defendant Nirvana Transport, Inc., n/k/a NT-

Liquidation, Inc., in the amount of $7,529.00 ("Union Check"). The Union Check represented an audit refund under Debtor-Defendants' workers' compensation policy number WCA5082946-11.

On June 30, 2016, the New York State Insurance Fund ("NYSIF") issued check number 54925289 payable to Debtor-Defendant Nirvana Inc. in the amount of $32,630.58 ("NYSIF Check"). The NYSIF Check represented an audit refund under Debtor-Defendant's workers' compensation policy number 2373 920-4.

These three checks (collectively, "Refund Checks") totaled $58,220.45 and were deposited into Debtor-Defendants' attorney's escrow account.

## ARGUMENTS

This adversarial proceeding was brought in order for there to be a determination as to whether the Refund Checks are "acquired assets" under the terms of the APA. Debtor-Defendants premise their Motion on the argument that the Refund Checks are not "acquired assets," per Sections 1.1(c), 1.2(c), 1.2(m) and 1.4 of the APA (Def.'s Mem. Law Supp. Mot. Summ. J. 5-7, ECF Adv. No. 8). Debtor-Defendants rely heavily on Sections 1.1(c) and 1.2(c), arguing that the Insurance Policies were not included among the Assigned Contracts identified in Section 1.1(c), or Schedule 1.1(c). Debtor-Defendants argue that Section 1.1(j) only includes as an acquired asset refunds "relating to Acquired Assets or Assumed Liabilities." Therefore, Debtor-Defendants contend, because the Insurance Policies were not included as Assigned Contracts, then the policies are not an Acquired Asset or Assumed Liability, and consequentially the refunds should also not be considered acquired assets. Additionally, Debtor-Defendants argue that Section 1.4, listing excluded liabilities, is relevant because the insurance policies were not expressly assumed, and therefore they are not an Assumed Liability for purposes of Section 1.1(j).

Plaintiffs refute this argument by relying on Sections 1.1(j), (m), and 1.2(k), and Schedule 1.2(k) (Pl.'s Mem. Law Resp. Def.'s Mot. Summ. J., ECF Adv. No. 11). Plaintiffs argue that the APA must be read as a whole and that Debtor-Defendants' arguments disregard the specific provisions of the APA relating to insurance policies and insurance proceeds. Citing Section 1.1(j), Plaintiff's position is that the APA specifically deems all refunds, including insurance refunds, relating to an acquired asset as acquired assets. Section 1.1(m) includes as an acquired asset all insurance policies relating to the Business, any Acquired Assets or any Assumed Liabilities, except those provided in Section 1.2(k). Section 1.2(k) excludes those insurance policies listed in Schedule 1.2(k). Schedule 1.2(k) lists only "none" as excluded insurance policies. Therefore, Plaintiffs argue that a plain reading of the APA indicates that the Refund Checks are acquired assets as the policies are not specifically excluded as acquired assets in Schedule 1.2(k).

## DISCUSSION

Summary judgment is proper if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056. When a party moves for summary judgment, a court may *sua sponte* grant summary judgment in favor of the non-moving party, if each side "has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999). The parties agree that there is no genuine dispute as to any material fact, and that the only question is whether the Refund Checks are considered acquired assets under a plain reading of the APA. Accordingly, it is clear that one of the two parties is entitled to judgment under the present posture of this adversary proceeding.

Under New York law, "a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992); *In re Allegiance Telecom, Inc.*, 356 B.R. 93, 98-9 (Bankr. S.D.N.Y. 2006). Furthermore, "[w]hen parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms." *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004); *In re Allegiance Telecom, Inc.*, 356 B.R. at 98-9. In the absence of ambiguity, the parties' subjective intent is irrelevant, and the Court is to interpret the contract according to the plain meaning of its terms. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1278 (2d Cir. 1989). Courts have found that "[l]anguage whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." *Metropolitan Life Ins. v. RJR Nabisco*, 906 F.2d 884, 889 (2d Cir. 1990); *see also Lee v. BSB Greenwich Mortg. L.P.*, 267 F.3d 172, 179 (2d Cir. 2001) ("any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms"). When determining whether terms are ambiguous, New York courts read a contract as a whole, and a "court is to consider its '[p]articular words' not in isolation 'but in light of the obligation as a whole and the intention of the parties manifested thereby'." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (*quoting Kass v. Kass*, 91 N.Y.2d 554, 566 (1998)); *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328 (S.D.N.Y. 2012); *see also Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989) ("In determining the meaning of a contract, this Court will 'look to all corners of the document rather than view sentences or clauses in isolation'").

The Court finds that the terms of the APA are plain and unambiguous. Therefore, the Court will look only to the language contained in the APA to determine whether the Refund Checks are

acquired assets, and will not look to any extrinsic evidence, such as the parties' subjective intent in drafting the APA or the parties' post-sale actions.

The Refund Checks are refund proceeds from three separate insurance policies held by the Debtor-Defendants for business purposes (workers compensation and commercial liability). The APA specifically addresses when insurance policies, and refund proceeds therefrom, are to be considered acquired assets in Sections 1.1(j), (m), and 1.2(k), and Schedule 1.2(k). Section 1.1(j) includes as an acquired asset "all . . . refunds (including all tax and insurance refunds) . . . relating to any Acquired Assets or Assumed Liabilities." Section 1.1(m) must be read in conjunction with Section 1.1(j) because it specifically includes as an acquired asset "all of Sellers' insurance policies and claims and rights thereunder relating to the Business, any Acquired Assets or any Assumed Liabilities, except as provided in Section 1.2(k)." As these insurance policies do relate to the business, then Section 1.1(m) directs that they are acquired assets, unless specifically excluded in Section 1.2(k). Sections 1.1(j) and (m) direct that the insurance refund proceeds relating to the acquired insurance policies are to be considered acquired assets, subject to the exclusions in Section 1.2(k). Section 1.2(k) specifically excludes as acquired assets those insurance policies listed in Schedule 1.2(k). Schedule 1.2(k) only lists "none" under insurance policies that are to be considered excluded assets, per Section 1.2(k). Therefore, under a conjunctive and plain reading of these four provisions of the APA, the Court finds that the Refund Checks are acquired assets.

Debtor-Defendants urge the Court to instead analyze this question under Section 1.1(c), which relates to assumed contracts in the sale transaction. Specifically, Section 1.1(c)(vi) states that Sellers assume those contracts ("Other Contracts") listed on Schedule 1.1(c). Debtor-Defendants argue that because the insurance policies were not listed in Schedule 1.1(c), then they are not considered assumed contracts. Debtor-Defendants read Sections 1.1(j) and (c) in

conjunction to conclude that because the Plaintiff did not expressly assume the insurance policy contracts, then they are considered excluded assets, and therefore the refunds therefrom are also to be considered excluded assets. The Court does not agree with this interpretation of the APA. The APA specifically addresses how insurance policies and refunds therefrom are to be treated in the sale in Sections 1.1(j), (m), 1.2(k), and Schedule 1.2(k). Insurance policies are specific types of contracts. Where the APA has both a general "assumed contracts" provision and specific provisions to treat insurance policies and insurance refunds, the Court will rely on the specific provisions to govern its interpretation. Restatement (Second) of Contracts § 203(c) (Am. Law Inst. 2016) ("specific terms and exact terms are given greater weight than general language"). Therefore, because Section 1.1(m), in conjunction with Section 1.2(k) and Schedule 1.2(k), dictates that these insurance policies are in fact acquired assets, then the fact that these policies are not assumed contracts per Section 1.1(c) is inconsequential.

Debtor-Defendants also urge the Court to look to Section 1.4 to conclude that these insurance refund proceeds are not acquired assets. Section 1.4(l) states that "any Liabilities arising under any Contract that is not an Assigned Contract" will be considered an "Excluded Liability." Debtor-Defendants read Sections 1.4(l), 1.1(c) and 1.1(j) together to conclude that because these insurance policies were not assumed contracts under Section 1.1(c), they are therefore an excluded liability under Section 1.4(l), and the proceeds therefrom cannot be acquired assets under Section 1.1(j). This reading of the APA is unnecessarily circular and convoluted when there are particular APA provisions that address insurance policies and insurance refunds specifically. For the reasons stated above, the Court will turn to those specific provisions of the contract for its interpretation and find that Sections 1.1(j), (m) 1.2(k) and Schedule 1.2(k) require that the Refund Checks are acquired Assets.

Lastly, Debtor-Defendants referenced the case *BOKF, N.A. v. JPMorgan Chase Bank, N.A., BOKF, N.A. v. JPMorgan Chase Bank (In re MPM Silicones, LLC)*, 518 B.R. 740 (Bankr. S.D.N.Y.2014), during their oral argument to support their final argument that the "notwithstanding" language in Section 1.2 augments the language contained in Section 1.1 of the APA. The Court asked Debtor-Defendants to submit a letter briefing this case and allowed Plaintiff to respond to the letter thereafter. The Court has considered both Debtor-Defendants' Letter Response and Plaintiff's Letter Reply in rendering its decision, and finds that neither this case nor this additional argument changes the Court's decision. Both parties seemingly agree that the "notwithstanding" language that prefaces Section 1.2 does in fact augment the assets that are acquired in Section 1.1. Essentially, Section 1.1 lists what assets are acquired, subject to Section 1.2, which then excludes some of those assets contained in Section 1.1. The Court reads both Sections 1.1 and 1.2 conjunctively in determining which assets are acquired and excluded. Sections 1.1(j) and (m) specifically include the insurance policy refunds as acquired assets, subject to Section 1.2(k) which specifically excludes those insurance policies listed in Schedule 1.2(k). As Section 1.2(k), and subsequently Schedule 1.2(k), do not list any insurance policies that are to be considered excluded, then these proceeds are deemed acquired.

Debtor-Defendants urge the Court to consider the fact that the Plaintiff cancelled the insurance policies after closing and acquired new insurance policies thereafter in order to conclude that the policies were not acquired under the APA. As stated above, the Court will not consider this extrinsic evidence in interpreting the APA because the terms of the APA are not ambiguous.

## CONCLUSION

For the foregoing reasons, the movant Debtor-Defendants' motion for summary judgment is denied, and the Court, *sua sponte*, grants summary judgment in favor of Plaintiff, with separate judgment to follow.

It is SO ORDERED.

Dated: December 13, 2016
      Utica, New York

                                                  Hon. Diane Davis
                                                  U.S. Bankruptcy Judge